```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MARK BELLI,

                       Plaintiff,
       -against-

UNITED STATES DEPARTMENT OF                          MEMORANDUM AND ORDER
LABOR, OFFICE OF LABOR-MANAGEMENT                    18-CV-3126 (PKC)(LB)
STANDARDS; UNITED ASSOCIATION OF
JOURNEYMEN AND APPRENTICES OF
THE PLUMBING AND PIPE FITTING
INDUSTRY OF THE UNITED STATES
AND CANADA; PLUMBERS LOCAL
NO. 1; PAUL O'CONNOR, Financial
Secretary-Treasurer; MICHAEL APUZZO,
Business Manager; JOHN HICKEY,
President & Business Agent,

                       Defendants.
----------------------------------------------------------------x
```
PAMELA K. CHEN, United States District Judge:

Plaintiff Mark Belli, proceeding *pro se*, brings this action against Defendants seeking injunctive and declaratory relief. Belli alleges that Defendant Plumbers Local No. 1's practice of "slate voting" violates Title I of the Labor-Management Reporting and Disclosure Act of 1959 (the "LMRDA"). For the reasons stated herein, the Court *sua sponte* dismisses this case for lack of subject-matter jurisdiction.

## BACKGROUND

Beginning in 2012, Plumbers Local No. 1 instituted "slate voting", which allows a group of ten or more nominees who meet the election eligibility requirements to be grouped together on the ballot in the union's General Elections. (Complaint ("Compl."), Dkt. 1, at ¶ 33.) Plaintiff alleges that these slates consist "primarily" of "'the Administration Team candidates' or incumbents" and that the slates are permitted "to choose their ballot position prior to the

independent candidates." (*Id.* at ¶ 4.) According to Plaintiff, all of the slate candidates are "automatically" listed in "Row A"[1] of the ballot and can be selected "with the press of one single button". (*Id.* at ¶¶ 5-6, 52, 54-55; *see also* Dkt 1, at ECF 16 (sample ballot from 2018 election).) However, "[i]ndividual and slate nominations [are] permitted." (Compl., at ¶ 33.)

Plaintiff argues that slate voting violates Defendant's constitution and by-laws, which require that "any and all candidates running for office must pick for their position on the ballot", because the slate candidates are automatically listed in the Row A, *i.e.*, the first column, of the General Election ballot. (*Id.* at ¶¶ 2, 62-66.) Furthermore, Plaintiff argues that "the inequalities of the nominating process and the change that slate voting has made to ballot positions provide an unfair advantage to the Administration Team candidates" by "skew[ing] the election process toward incumbent candidates and toward those who are 'approved' by the Administration" and by "deterr[ing] independent candidates from running for office". (*Id.* at ¶¶ 11-13.)

On May 29, 2018, Plaintiff filed the instant Complaint and motion for preliminary injunction seeking to have the Court enjoin Defendant Plumbers Local No. 1 from using slate voting in the General Election scheduled for June 2, 2018, and in any future election. (Dkt. 1.) On May 30, 2018, the Court denied Plaintiff's request to proceed *in forma pauperis* and advised him that his case would be dismissed if he failed to pay the filing fee. (Dkt. 6.) That same day, Plaintiff paid the filing fee. (Dkt. 12.)

## DISCUSSION

Title I of the LMRDA requires that union members "shall have equal rights and privileges . . . to nominate candidates" and "to vote in elections or referendums of the labor organization . .

---

[1] Though denominated by Plaintiff as a row, "Row A" is, in fact, a column, next to which there is another column containing the names of the independent candidates. (Dkt. 1, at ECF 16 (sample ballot from 2018 election).) References to "ECF" signifies the pagination generated by the Court's CM/ECF system and not the document's internal pagination.

. subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1); *see also Members For a Better Union v. Bevona,* 152 F.3d 58, 63 (2d Cir. 1998) ("Title I of the LMRDA has been called a 'Bill of Rights' that guarantees union members the equal right to vote and participate in union decisions[.]"). Under the LMRDA, the district court has jurisdiction over cases alleging violations of Title I "when the provisions of the union constitution and by-laws are applied in such a way as to deprive union members of rights guaranteed by that Act." *Commer v. McEntee*, 121 F. Supp. 2d 388, 395 (S.D.N.Y. 2000) (internal quotation marks omitted), *aff'd sub nom. Comer v. McEntee*, 15 F. App'x 21 (2d Cir. 2001); 29 U.S.C. § 412. However, "the United States Court of Appeals for the Second Circuit has narrowly interpreted the supervisory powers given federal courts by [T]itle I to interfere in and to oversee union elections." *O'Neill v. United Auto Workers Local Union No. 424*, No. CIV-87-116E, 1987 WL 8049, at *1 (W.D.N.Y. Mar. 20, 1987) (citing *Robins v. Rarback*, 325 F.2d 929, 930-31 (1963), *cert. denied*, 379 U.S. 974 (1965)). Additionally, "the Supreme Court has held that the existence of jurisdiction under [29 U.S.C. § 412] depends upon whether the specific allegations in the complaint reflect an infringement of rights protected under Title I [of] the LMRDA." *Bevona*, 152 F.3d at 62 (citing *Calhoon v. Harvey*, 379 U.S. 134, 138 (1964)).

Construing Plaintiff's complaint liberally[2], the Court finds that it fails to meet this test, and, therefore, this Court lacks subject-matter jurisdiction over this case. Title I of the LMRDA "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Calhoon*, 379 U.S. at 139. It "does not provide any absolute voting rights to members", *Smith v. Bowers*, 337 F. Supp. 2d 576, 587 (S.D.N.Y. 2004) (citation

---

[2] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted).

omitted); rather, it "curbs no abuse other than discrimination against some union members and in favor of others with respect to voting rights. . . . To be viable, a claim under [Title I] must therefore allege denial of some privilege or right to vote which the union has granted to others[,]" *Bevona*, 152 F.3d at 65 (emphasis omitted). "Failure to allege the necessary discrimination in [the] grant of voting rights deprives a court of subject matter jurisdiction over the case." *Smith*, 337 F. Supp. 2d at 587; *cf. Mangan v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, No. 86-CV-9188 (CSH), 1988 WL 80185, at *2 (S.D.N.Y. July 27, 1988) ("[T]he district courts lack subject matter jurisdiction under Title I of [the] LMRDA over suits where a union's constitutional candidate-eligibility procedures are uniformly imposed. Title I addresses individual discrimination.").

Although Plaintiff states, in a conclusory fashion, that slate voting unfairly advantages the incumbent candidates and "deter[s] independent candidates from running for office" (Compl., ¶¶ 11-13), he does not allege that union members are, in any way, prevented from nominating, or voting for, their preferred candidates (*see id.* at ¶ 33 (stating that "[i]ndividual and slate nominations [are] permitted" under the rules)). Nor does Plaintiff sufficiently allege facts to support the assertion that the positioning of the slate in the first column and the ease of one-click voting for the entire slate diminishes the chances of the independent candidates to be elected. Additionally, Plaintiff does not provide any evidence that slate voting is discriminatory, *e.g.*, that only Administration or incumbent candidates are permitted to run as a slate. While union members may have to expend an additional few seconds of effort to look at the second column to vote for specific independent candidates,

> [a]s in [the Supreme Court's decision in] *Calhoon*, "the complaining union member[] here ha[s] not been discriminated against in any way and ha[s] been denied no privilege or right to vote or nominate which the union has granted to others." Certainly, the plaintiff[] here cannot claim . . . that [he] ha[s] been totally

4

> denied the right to vote for important union offices. Nor is there a [colorable] claim
> that the votes of some members count more than the votes of others in the election[.]

*Fritsch v. Dist. Council No. 9 Bhd. of Painters, Decorators & Paper Hangers of Am.*, 493 F.2d 1061, 1063 (2d Cir. 1974) (quoting *Calhoon*, 379 U.S. at 139); *see also Bernard v. Local 100, Transp. Workers Union of Am.*, 873 F. Supp. 824, 829 (S.D.N.Y. 1995), *aff'd sub nom. Bernard v. Local 100, Transp. Workers Union of Am., AFL-CIO*, 112 F.3d 67 (2d Cir. 1997) ("Following *Calhoon*, courts consistently entertain challenges to [election] eligibility requirements [under Title I] only when the plaintiff alleges disparate application of those requirements resulting in the denial of members' equal rights to nominate or vote.") (collecting cases). Instead, Plaintiff's allegations boil down to allegations of misconduct by union officials regarding the ballot positions. (*See* Compl. ¶¶ 25-55; Affidavit of Mark Belli, Dkt. 11, ¶¶ 8-12.) But "[m]isconduct by union officials in administering an election does not provide this Court with a basis for exercising subject matter jurisdiction under the LMRDA in the absence of discrimination." *Barry v. Fishman*, No. 02-CV-6895 (DC), 2002 WL 31729502, at *3 (S.D.N.Y. Dec. 5, 2002); *see also Bevona*, 152 F.3d at 62-63 (finding no jurisdiction under Title I where a union vote was allegedly tainted by union officials' misconduct). As the court held in *O'Neill*, "[h]owever invidious the manipulation of ballot positions to favor certain candidates may have been, it has not resulted either in the deletion of any candidate from the ballot or in the denial of any member's right to vote. Thus, the allegation that the procedures used to select ballot positions [were] fraudulent fails to state a claim under [T]itle I of the LMRDA." 1987 WL 8049, at *1 ("To lodge tenably a violation of [T]itle I, a plaintiff must allege a direct, rather than an indirect attack, on the right to vote.").

In the absence of a colorable claim "that provisions of the [Plumbers Local No. 1's] constitution and by-laws are being applied in such a way as to deny equality in voting," this Court

does not have subject-matter jurisdiction over Plaintiff's claim.[3,4] *Gurton v. Arons*, 339 F.2d 371, 374 (2d Cir. 1964); *see also Calhoon*, 379 U.S. at 139 ("Whether the eligibility requirements set by the union's constitution and bylaws [are] reasonable and valid is a question separate and distinct from whether the right to nominate on an equal basis given by [Title I] was violated."); *Bevona*, 152 F.3d at 63-64 (collecting cases).

## CONCLUSION

For the reasons stated herein, Plaintiff's complaint is dismissed for lack of subject-matter jurisdiction. The Clerk of Court is respectfully directed to enter judgment and close this case

---

[3] Even if the Court found that it had subject-matter jurisdiction over Plaintiff's claim, it would have denied Plaintiff's motion for preliminary injunction. In the Second Circuit, "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985) (citation omitted). Here, Plaintiff has "not demonstrated that [he] will be irreparably injured if the election proceeds." *Bernard*, 873 F. Supp. at 827; *see also Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F.Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."). Had the case proceeded before the Court, no preliminary injunction would have been warranted, even if the Court found the slate voting to be impermissible, because the Court, post-election, could have "expedite[d] this lawsuit" and required the union to hold another election to remedy the violation. *Bernard*, 873 F. Supp. at 827 (finding that because court could have required the union to hold another election, "[t]here is no demonstration on this record that the plaintiff[] would be prejudiced by such a procedure"); *see also Smith*, 337 F. Supp. 2d at 592 ("Plaintiff[] . . . ha[s] failed to demonstrate why delaying a re-vote or other injunctive relief that the Court might award after trial would itself cause irreparable harm.").

[4] If Plaintiff wishes to continue to pursue his claim, it could be brought under Title IV of the LMRDA, but not by Plaintiff. "Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials and provides its own separate and different administrative and judicial procedure for challenging those standards." *Calhoon*, 379 U.S. at 138. Under Title IV of the LMRDA, the Secretary of Labor has the *exclusive* right to bring a post-election enforcement suit. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 531 (1972). Title IV's provisions "may be enforced only by the Secretary of Labor after a union member pursues the union's internal channels and then files a complaint with the Secretary of Labor. Then, if the Secretary finds that there is probable cause to believe that a violation of the LMRDA occurred, the *Secretary* can bring suit in federal court to set aside the election." *Bernard*, 873 F. Supp. at 829 (citing 29 U.S.C. § 482) (emphasis added); *see also Commer v. Dist. Council 37, Local 375*, 990 F. Supp. 311, 317-18 (S.D.N.Y. 1998).

accordingly.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

                SO ORDERED.

                /s/Pamela K. Chen
                PAMELA K. CHEN
                United States District Judge

Dated: Brooklyn, New York
       May 31, 2018